■ In the Matter of LAWRENCE M. MAIDA, Petitioner, v H. CARL McCALL, as State Comptroller, Respondent. [760 NYS2d 582] —Peters, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's applications for performance of duty and accidental disability retirement benefits.

Petitioner, a police officer for the Village of Mamaroneck in Westchester County, was injured on December 9, 1989 when a female inmate he was placing into a holding cell became

combative causing him to strike his right elbow on a steel door jam. In February 1997, after 20 years of service, he retired from his position. At that time, he filed applications for accidental and performance of duty disability retirement benefits. Following the denial of both applications, petitioner requested a hearing and redetermination. At the conclusion of the hearing, the Hearing Officer also denied the applications, finding that petitioner was not permanently incapacitated from performing his duties and he did not suffer a disability that was causally related to the December 9, 1989 incident. This CPLR article 78 proceeding ensued.

We confirm. The record contains conflicting medical evidence concerning whether petitioner was permanently incapacitated from performing his duties and whether he suffered a disability that was causally related to the December 9, 1989 incident. It was for respondent to evaluate this conflicting evidence and to make a determination on the basis thereof (*see Matter of Mallory v New York State & Local Empls. Retirement Sys.*, 261 AD2d 775, 775 [1999]; *Matter of Kesick v New York State & Local Employees' Retirement Sys.*, 257 AD2d 831, 831 [1999]). Such determination will be upheld as long as it is supported by substantial evidence (*see Matter of Rossiello v Regan*, 203 AD2d 868, 869-870 [1994]; *Matter of Longendyke v Regan*, 195 AD2d 695, 696 [1993]).

Petitioner was initially diagnosed with ulnar neuritis following his injury, and was treated with Naprosyn and an Ace bandage. For the next six years, he treated himself with ice and weight lifting. In May 1996, physician Richard Freeman diagnosed him with traumatic right lateral epicondylitis, and advised use of a power flexor to strengthen the extensor muscles and anti-inflammatory medication. He did not provide an opinion as to the extent of petitioner's alleged disability or the cause thereof.

Bruce Meinhard, a physician who examined petitioner in March 1997, diagnosed him with posttraumatic lateral epicondylitis which he characterized as a mild permanent partial disability. He further opined that the incident of December 9, 1989 was the cause of petitioner's disability. A completely contrary view, however, was expressed by Leon Sultan, an orthopedic surgeon who examined petitioner in March 1998. He found no evidence of an orthopedic ongoing disability, neurological defect or functional impairment. He opined that it was conceivable that petitioner suffered lateral epicondylitis as a result of weight lifting and opined that it was not causally related to the incident of December 9, 1989. He further stated that petitioner did not suffer a permanent disabling condition.

Petitioner admitted that he continued to work on a full-time basis from 1989 through 1997 and continued to qualify for use of a handgun even though he claimed to have lost strength in his grip. During this time period, he never indicated the presence of any disability to his employer. This evidence, together with Sultan's evaluation, provide substantial evidence supporting respondent's determination and we, therefore, decline to disturb it.

Cardona, P.J., Crew III, Rose and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.