In the Matter of ARTHUR J. ROSSI, Petitioner, v NEW YORK STATE COMPTROLLER et al., Respondents. [866 NYS2d 399]—

Stein, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller which denied petitioner's application for accidental disability retirement benefits.

Petitioner, a Port Authority police officer, filed applications for accidental and performance of duty disability retirement benefits following a September 2000 incident wherein petitioner was struck on the head by a metal beam that fell from a collapsed scaffold. Following disapproval of his applications, petitioner sought a hearing and redetermination, at the conclusion of which a Hearing Officer found that petitioner failed to establish that he was permanently incapacitated from the performance of his duties. Respondent Comptroller accepted those findings, prompting petitioner to commence this proceeding pursuant to CPLR article 78 to challenge that determination.[1]

As the applicant, petitioner bore the burden of establishing that he is permanently incapacitated from the performance of

---

1. Although the Comptroller denied both of petitioner's applications, only the denial of petitioner's application for accidental disability retirement benefits is challenged in this proceeding.

his duties as a Port Authority police officer (*see Matter of Mainzer v DiNapoli*, 52 AD3d 1167 [2008]).[2] In this regard, petitioner testified at length regarding his prior injuries, his current symptoms and the duties required of him as a Port Authority police officer. Petitioner also offered the testimony of Mitchell Goldstein, the board-certified orthopedic surgeon who evaluated petitioner in February 2004. Goldstein diagnosed petitioner with cervical disk herniation and cervical radiculopathy, together with nerve root impingement. Specifically, Goldstein noted that an MRI conducted approximately two months after petitioner's accident showed an acute injury to the neck and accompanying edema, and that an EMG study undertaken approximately six weeks after petitioner's accident revealed irritation and damage to the C-7 nerve root. Similarly, Goldstein testified that a myelogram conducted in April 2001, among other things, showed a moderate to large paracentral disk herniation at level C-5/C-6 with a significant mass effect on the right nerve root, which could be expected to produce pain consistent with petitioner's symptoms. Based upon his review of these test results, petitioner's job description and duties, and his physical examination of petitioner, Goldstein opined that petitioner was permanently incapacitated from the performance of his duties as a Port Authority police officer and that the injuries petitioner sustained were causally related to the September 2000 accident.

Respondent New York State and Local Retirement System offered the testimony of Steven Schwartz, a board-certified neurologist who evaluated petitioner in September 2002. After examining petitioner and reviewing the foregoing diagnostic studies and petitioner's job description, Schwartz opined that petitioner was neurologically intact and was not permanently incapacitated from the performance of his duties from a neurological perspective. Schwartz candidly conceded, however, that he did not conduct an orthopedic assessment of petitioner, that he was not qualified to do so and that he imagined one could be orthopedically disabled but neurologically intact. Notably, Schwartz did not dispute the diagnosis of disk herniation, nor did he deny that petitioner might have a nerve root irritation at level C-7, and he acknowledged that petitioner's history and symptoms were consistent with a diagnosis of radiculopathy.

While respondents correctly note that the Comptroller is

---

**2.** At the start of the hearing, respondent New York State and Local Retirement System conceded that the September 2000 incident constituted an "accident" and that such accident occurred while petitioner was in service as a police officer.

vested with the exclusive authority to weigh and evaluate conflicting medical testimony and to credit the opinion of one expert over that of another (*see Matter of Varriano v Hevesi*, 40 AD3d 1357, 1359 [2007], *lv denied* 9 NY3d 815 [2007]), "the proper exercise of that discretionary authority 'presupposes the existence of legally sufficient conflicting evidence' " (*Matter of Burnham v McCall*, 265 AD2d 763, 764 [1999] [citation omitted]). We agree with petitioner that no actual conflict is present here. Schwartz indeed opined that petitioner evidenced no neurological deficits that would render him permanently incapacitated from the performance of his duties, but Goldstein's testimony as to petitioner's demonstrated orthopedic disability and its causal relationship to the September 2000 accident was unrefuted. Under such circumstances, we must conclude that the Comptroller's determination denying petitioner's application for accidental disability retirement benefits is not supported by substantial evidence in the record as a whole (*see generally Matter of Chapin v Hevesi*, 6 AD3d 918, 920 [2004]; *Matter of Wygand v Regan*, 135 AD2d 1060, 1061 [1987]).

Peters, J.P., Rose, Lahtinen and Kavanagh, JJ., concur. Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision.